IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PARAGON OFFICE SERVICES, LLC, OFFICE SURGERY SUPPORT SERVICES, LLC, and AMBULATORY HEALTH SYSTEMS, LLC,** | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:11-CV-1898-L** |
| **AETNA, INC., AETNA HEALTH, INC., and AETNA HEALTH MANAGEMENT, LLC,** | § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs' Motion to Remand, filed September 2, 2011 (Doc. 7). After carefully considering the motion, response, reply, sur-replies, appendices, and applicable law, the court **denies** Plaintiffs' Motion to Remand.

**I.   Factual and Procedural Background**

Plaintiffs Paragon Office Services, LLC ("POS"), Office Surgery Support Services, LLC ("OSS"), and Ambulatory Health Systems, LLC ("AHS") (collectively, "Plaintiffs" or the "Paragon entities") filed a civil action against Defendants Aetna Inc., Aetna Health, Inc., and Aetna Health Management, LLC (collectively, "Defendants" or the "Aetna entities") on June 28, 2011, in the 68th Judicial District Court for Dallas County, Texas. Defendants removed the state court action to this court on August 3, 2011, asserting that the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. §§ 1001 et seq.*, completely preempts Plaintiffs' state law claims. The Paragon entities filed Plaintiffs' Motion to Remand, asserting that removal was

**Memorandum Opinion and Order – Page 1**

improper because this case does not involve any interpretation of plan benefits and thus is not preempted by ERISA. Plaintiffs also request that the court order Defendants to pay the costs and expenses incurred as a result of Defendants' "objectively unreasonable" removal of this action.

The court sets forth the background facts as asserted in Plaintiffs' Original Petition ("Petition") filed in state court.[1] Plaintiffs provide anesthesia services to obstetricians and gynecologists who perform in-office surgeries, such as endometrial ablations, which are procedures to remove or destroy the inner lining of the uterus. Plaintiffs' anesthesia services include two components: (1) the service rendered by the anesthesiologist, and (2) the equipment used by the anesthesiologist to perform the service. Pet. ¶ 10. Plaintiffs' Petition alleges that the Aetna entities have paid the Paragon entities for anesthesia services, including the cost of the anesthesiologist and the equipment. Pet. ¶ 12. Plaintiffs assert, however, that "Aetna has taken inconsistent positions on payment for the equipment services. Sometimes, Aetna pays for the equipment, and on other occasions, it has refused, claiming that office equipment is 'not covered.'" Pet. ¶ 12. The Paragon entities assert that there is no dispute that their professional and equipment services are covered services or that Aetna has received money from its insureds to pay for those services. Pet. ¶ 13. Plaintiffs state that if the services were "to be provided in a hospital or surgical center, all services rendered, including the service rendered by the medical professional and the accompanying equipment services would be paid in full." Pet. ¶ 13. The Paragon entities allege that the Aetna entities are "arbitrarily and improperly" not paying for equipment services. Pet. ¶ 13.

---

[1] The Paragon entities filed Plaintiffs' First Amended Complaint ("Complaint") in this court on January 16, 2012. The Complaint adds Paragon Ambulatory Physician Services, LLC as a party but does not change the causes of action alleged by Plaintiffs. Although the court cites to and relies on Plaintiffs' Petition, as it was the live pleading at the time of removal, the court's analysis, reasoning, and result would be no different if it relied on the Complaint.

**Memorandum Opinion and Order – Page 2**

Plaintiffs are out-of-network providers[2] who do not have an express contractual relationship with the Aetna entities for the provision of anesthesia services. Thus, Plaintiffs' contractual claim is one under implied contract. Plaintiffs contend that the Aetna entities have implied contracts with POS, AHS, and OSS for payment for anesthesia services and equipment based on the "parties' agreements and course of dealing." Pet. ¶ 21. Plaintiffs also state that there was no express contractual relationship between Plaintiffs and Defendants. Mot. to Remand 9. ("[W]hile the lack of written contract may be a factual distinction between this case and [cases discussing rate of payment vs. right to payment], it is a distinction of no consequence to the legal principles. Here Paragon and the Defendant had an implied contract.") The Paragon entities assert that they have "submitted and agreed to Aetna's terms and conditions, including providing necessary "provider information" or "record locator" information to comply with Aetna's billing requirements and to be compensated by Aetna for the provision of anesthesia services." Pet. ¶ 22. Plaintiffs state that they "provided and billed Aetna for the equipment necessary to administer the covered anesthesia services provided on an 'out-of-network' basis to Aetna's insureds." Pet. ¶ 23. Plaintiffs contend that "[b]y accepting the anesthesia services on behalf of its insureds, and paying and agreeing to pay for the medical professional charges, Aetna impliedly agreed to also pay for the equipment used to administer those services." Pet. ¶ 23.

The crux of Plaintiffs' state court action is that they seek payment for equipment used to provide anesthesia services to individuals insured by the Aetna entities. Plaintiffs assert state law claims for breach of implied contract, violation of the Texas Insurance Code, fraud, theft of services, quantum meruit, unjust enrichment, tortious interference with existing contracts and

---

[2] An out-of-network provider is one that has not contracted with the insurance company for reimbursement at a negotiated rate. *See* Defs.' App. (Doc. 14) 14-15.

**Memorandum Opinion and Order – Page 3**

prospective business relationships, and estoppel and quasi-estoppel. Plaintiffs seek actual and punitive damages, attorney's fees, and other relief.

## II. Legal Standards

### A. General Subject Matter Jurisdiction Standard

A federal court has subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, which is commonly referred to as "arising under" jurisdiction. 28 U.S.C. § 1331. This provision for federal question jurisdiction is generally invoked by a plaintiff pleading a cause of action created by federal law (such as claims brought pursuant to 42 U.S.C. § 1983, or by defendants removing to federal court because the plaintiff's claim arises under federal law.) This, of course, is not the only manner in which federal question jurisdiction arises. An action that asserts only state law claims may "arise under" federal law if "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983) (citations omitted); *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). This means that a federal district court has jurisdiction over a state claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

Accordingly, if a case is removed to federal court, the defendant has the burden of establishing subject matter jurisdiction; if a case is initially filed in federal court, the burden rests with the plaintiff to establish that the case "arises under" federal law, or that diversity exists and that the amount in controversy exceeds the jurisdictional threshold.

Whether an action "arises under" federal law and creates federal question jurisdiction over a case removed from state to federal court, or one originally filed in such court, ordinarily "must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted). "A case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393 (1987). "A defense that raises a federal question is inadequate to confer federal jurisdiction." *Thompson*, 478 U.S. at 808 (citation omitted). "Even an inevitable federal defense does not provide a basis for removal jurisdiction." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d at 551 (citations omitted). In other words, the *complaint* must "raise[] issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993).

### B. Well Pleaded Complaint Rule and Exception for Complete Preemption

A "corollary of the well-pleaded complaint rule developed in case law, however, is that Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc). In other words, "[w]hen the federal statute completely pre-empts the state law cause of

**Memorandum Opinion and Order – Page 5**

action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality, based on federal law," and such "claim is then removable under 28 U.S.C. § 1441(b)." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). "ERISA is one of these statutes." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

ERISA section 502, the statute's civil-enforcement provision, is "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Davila*, 542 U.S. at 208.

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

*Davila*, 542 U.S. at 208-09 (ellipses and internal citations omitted). "Any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209 (citation omitted). "Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action."[3] *McGowin v. Manpower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (citation omitted).

---

[3] State law claims that seek relief within the scope of the civil enforcement provisions of section 502(a)(1)(B) are completely preempted and thus removable to federal court. *Arana*, 338 F.3d at 440; *see also Giles*, 172 F.3d at 337 (5th Cir. 1999). Another kind of preemption is "conflict" or "ordinary" preemption. This type of preemption occurs "when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana*, 338 F.3d at 439. Conflict or ordinary preemption does not create a basis for federal jurisdiction. *Giles*, 172 F.3d at 337. This is the type of preemption set forth in 29 U.S.C. § 1144(a).

**Memorandum Opinion and Order – Page 6**

"Complete preemption converts a state law civil complaint alleging a cause of action that falls within ERISA's enforcement provisions into one stating a federal claim for purposes of the well-pleaded complaint rule." *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (quoting *Davila*, 542 U.S. at 209) (internal quotation marks omitted). Stated differently, "even if the plaintiff did not plead a federal cause of action on the face of the complaint, the claim is 'necessarily federal in character' if it implicates ERISA's civil enforcement scheme." *Id.* (quoting *Giles v. Nylcare Health Plans, Inc.*, 172 F.3d 332, 336-37 (5th Cir. 1999)). ERISA section 502(a)(1)(B) establishes that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" *Lone Star*, 579 F.3d at 529 (quoting 29 U.S.C. § 1132(a)(1)(B)). "Therefore, if a party's state law claims fall under this § 502(a)(1)(B) definition, they are preempted by ERISA." *Id.* A cause of action falls within the scope of section 502(a)(1)(B), and is therefore completely preempted, if: (1) the "individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. "To determine whether [Plaintiffs'] causes of action fall 'within the scope' of ERISA § 502(a)(1)(B), [the court] must examine [Plaintiffs'] complaint[], the statute on which their claims are based . . . , and the various plan documents." *Id.* at 211.

## III. Analysis

### A. Whether Plaintiffs Could Have Brought Their Claim under ERISA Section 502(a)(1)(B)

In *Paragon Office Services, LLC v. UnitedHealthGroup, Inc.*, 2012 WL 1019953 (N.D. Tex. Mar. 27, 2012), a case involving the same plaintiffs[4] and claims, and virtually the same facts, Chief Judge Sidney Fitzwater concluded that federal question jurisdiction existed for the court to hear the case. The opinion is well-written, illustrative, and applicable to what this court has to decide in the instant case. As Chief Judge Fitzwater's opinion addresses the issues that this court must decide, the court sees no reason to "reinvent the wheel" and, accordingly, relies substantially on the *Paragon Office v. UnitedHealthGroup* decision.

Plaintiffs' Petition does not assert claims under federal law, and Defendants do not contend that the court has diversity jurisdiction; thus, the Aetna entities can establish removal jurisdiction only if ERISA completely preempts one or more of Plaintiffs' state law claims. *See, e.g., Paragon Office v. UnitedHealthGroup*, 2012 WL 1019953, at *2. The first question under the *Davila* complete preemption test is whether Plaintiffs are asserting a claim that they could have brought under ERISA § 502(a)(1)(B).

#### 1. Whether ERISA Plans Are at Issue

To decide whether at least one of Plaintiffs' state law claims is completely preempted, the court must first determine whether the plans are ERISA employee welfare benefit plans. *See Paragon v. UnitedHealthGroup*, 2012 WL 1019953, at *4 (citation omitted). The Aetna entities assert that among the medical plans involved are the self-funded ERISA plans established and

---

[4] In *Paragon v. UnitedHealthGroup*, the plaintiffs are Paragon Office Services, LLC, Paragon Ambulatory Physician Services, LLC, Office Surgery Support Services, LLC, and Ambulatory Health Systems, LLC. In the case at bar, Plaintiffs' Petition lists Plaintiffs as Paragon Office Services, LLC, Office Surgery Support Services, LLC, and Ambulatory Health Systems, LLC. Paragon Ambulatory Physician Services, LLC was later added as a plaintiff in Plaintiffs' First Amended Complaint.

**Memorandum Opinion and Order – Page 8**

maintained by Cognizant Technology Solutions US Corp ("Cognizant") and Plains Capital Corporation ("Plains Capital") and the fully insured ERISA plan established and maintained by RFPG, LLC ("RFPG"). Defendants provide copies of the benefit plans along with supporting affidavits demonstrating that Cognizant and Plains Capital contracted with Aetna to provide administrative services to the plans, including claims administrative services. Defs.' App. (Doc. 14) 1-3; 104-06. Defendants also present evidence that the Aetna entities underwrite and provide certain claims administrative services to the RFPG Plan. *Id.* at 171-73. Each of these plans has sections titled "ERISA Rights" informing the participants in the group benefit plan that they are "entitled to certain rights and protections under the Employee Retirement Security Act of 1974." *Id.* at 96-98; 168-70; 250-52. The evidence Defendants present is similar to the evidence produced by the defendants in *Spring E.R., LLC v. Aetna Life Ins. Co.*, 2010 WL 598748, *2 n.1 (S.D. Tex. Feb. 17, 2010). The court explained:

> Although Plaintiff, in its original Motion, challenges whether this case in fact involves an ERISA health insurance plan at all, Defendants, in their response, provide the terms of the plans themselves with supporting affidavits explaining how the relevant plans did in fact meet the definition of an ERISA plan. The Court finds this evidence sufficient to establish that at least one of the health insurance plans involved in this case does in fact qualify as an ERISA plan.

*Spring E.R.,* 2010 WL 598748, *2 n.1 (internal citation to record omitted).

The Paragon entities acknowledge that "[t]his lawsuit may arguably 'involve' ERISA plans." Pls.' Mot. to Remand 5. Plaintiffs suggest that the claims for benefits involved in this case are governed by ERISA-regulated benefit plans. In light of this statement by Plaintiffs and the evidence submitted by Defendants, the court determines that there is sufficient evidence to establish that at least one of the health insurance plans involved in this case does in fact qualify as an ERISA plan. *See Paragon v. UnitedHealthGroup*, 2012 WL 1019953, at *4 (citation omitted) (where no genuine dispute regarding ERISA's applicability existed, the court

determined that an in-depth analysis was unnecessary and held that ERISA governed the relevant plans).

### 2. Standing to Sue under ERISA

The court next considers whether Plaintiffs have standing to sue under ERISA. According to their Petition, Plaintiffs are health-care providers. *See* Pet. ¶ 10. ("Paragon provides professional, in-office anesthesia services to obstetric[ians]/gynecologists . . . ."). Standing to sue under section 502(a) "is limited to participants, beneficiaries, the Secretary, or fiduciaries." *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891 (5th Cir. 2003) (citing 29 U.S.C. § 1132(a)). "Nevertheless, [the Fifth Circuit], like many of [its] sister Circuits, recognizes derivative standing [that] permits suits in the context of ERISA-governed employee welfare benefit plans[] to be brought by certain non-enumerated parties." *Id.* (citations omitted). "[A]n assignee of a plan participant has derivative standing to bring a cause of action for enforcement under ERISA." *Id.* at 892. A health-care provider has standing to sue under section 502(a) as an assignee of a participant or beneficiary in order to claim plan benefits. *See Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, 2006 WL 1663752, at *5 n.2 (S.D. Tex. June 13, 2006) (citing *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 401 n.7 (3d Cir. 2004)) (citation omitted) ("Almost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan."))

Defendants have introduced evidence that the Paragon entities have obtained assignments of benefits from Defendants' members for the payments they seek to collect from the Aetna entities. Specifically, Defendants provide an affidavit of a Senior Claims Benefit Specialist for

Aetna, Melanie Flanders, who has custody of Defendants' claims file materials and is familiar with Defendants' electronic claims database and the meanings of codes and entries therein made. Defs.' App. (Doc. 14) 253-56. Attached to the affidavit are printouts from Defendants' electronic database system relating to a medical claim for benefits for services provided on December 2, 2009, by AHS to a member of a health plan sponsored by RPFG and underwritten and administered by the Aetna entities. *Id.* at 256-60. The printouts bear the word "Assignment" with the letter "A" to the right of the word. *Id.* at 256. Flanders's affidavit states that the entry "A" in the Assignment field indicates the medical claim was submitted under an assignment to AHS of the member's rights to any covered benefits under her health plan. *Id.* at 254-55. Also attached to the affidavit are four pages of printouts from Aetna's electronic database system relating to a medical claim for benefits for services provided on June 26, 2009, by AHS to a member of plan sponsored by Cognizant and administered by the Aetna entities. *Id.* at 262-65. The printouts indicate the medical claim was submitted under an assignment to AHS of the member's rights to any covered benefits under her health plan. *Id.* at 262.

Plaintiffs argue that the evidence submitted by Defendants does not prove that the claims for benefits presented relate to a patient whose anesthesia equipment fee was not ultimately paid or that the patients and procedures indicated are included in the suit. Pls.' Reply in Supp. of Mot. to Remand 6. Plaintiffs, however, do not dispute receiving assignments. Plaintiffs instead contend that "the mere fact that Plaintiffs theoretically *could* sue as assignees is not the dispositive question: it is whether they *do* sue, and what is really at issue in the case." Pls.' Mot. to Remand 11. Plaintiffs also contend that "the fact that an assignment of benefits may have at one time been made is utterly irrelevant, because Paragon's claims in this lawsuit are not derivative of those rights." Pl.'s Reply in Supp. of Mot. to Remand 6.

The evidence presented by the Aetna entities is similar to the evidence produced by the defendants in *Spring E.R.*, which was deemed sufficient to confer standing. In *Spring E.R.*, the defendants "produce[d] printouts of records from their electronic database system reflecting claims for benefits submitted by Plaintiff." *Spring E.R.,* 2010 WL 598748, at *3. The defendants also provided an "accompanying affidavit of an Aetna Manager stat[ing] that the letter "A" in the Assignment field of these records indicates that the medical claim was submitted under an assignment to Plaintiff of the member's rights under the health plan." *Id.* In addition, the defendants submitted "a blank UB-92 form, or the paper forms used by institutions such as hospitals to submit claims for payment of healthcare expenses under patients' health benefit plans" and "a copy of the UB-92 form submitted by Plaintiff relating to one of the patients whose claims are at issue in this case," indicating the letter "Y" for "yes" in the "Assignment of Benefits Certification Indicator" field." *Id.* The plaintiff argued that it did not receive an assignment of benefits from its patients and that it understood the "Y" to mean that it accepts assignments of benefits, not that it did receive such an assignment in those individual cases. *Id.* The court, nevertheless, held that the plaintiffs were assignees. *Id.* at *4. Based upon the evidence provided by Defendants, the court determines that the Aetna entities have demonstrated by a preponderance of the evidence that Plaintiffs were assignees to the benefits conferred to Defendants' insureds under the ERISA plans.

### 3.  Breach of Implied Contract Claim and ERISA Section 502(a)(1)(B)

Plaintiffs' status as assignees to the benefits conferred to insureds under the ERISA plans does not resolve the preemption issue. Although a health-care provider's claim cannot be completely preempted if it did not receive an assignment that would give it standing to sue under ERISA, the assignment itself does not result in complete preemption of its claim. *Ambulatory*

*Infusion*, 2006 WL 1663752, at *7 (citing *Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*, 340 F. Supp. 2d 749, 760 n.9 (N.D. Tex. 2004) ("That [plaintiff] could have sued as an assignee is not dispositive . . . Given [plaintiff's] independent right of action as a creditor, the court will not recharacterize [it] as an assignee.")) The court next considers whether Plaintiffs could have brought at least some of their state law claim as a cause of action under section 502(a)(1)(B).

The basis of Plaintiffs' state court action is that they seek payment for equipment used to provide anesthesia services to individuals insured by the Aetna entities. Plaintiffs' claim for breach of implied contracts alleges that the Aetna entities have "implied contracts with POS, AHS, and OSS to pay for equipment services required as part of the professional services rendered by the anesthesiologist." Pet. ¶ 20. Plaintiffs allege that "pursuant to the parties' agreements and course of dealing" that they have the right "to be paid for the equipment used by the anesthesiologists in rendering services. *Id.* Plaintiffs assert that the Aetna entities' "refusal to pay for the services provided by POS, AHS, and OSS is a violation of the parties' agreements. *Id.* Plaintiffs also assert a state law claim for theft of services, alleging that Defendants "intentionally or knowingly secured the performance of Paragon's services by agreeing to pay for them, confirming its intent to pay by its words and conduct. Then, after Paragon performed the services, Aetna refused to pay for the services it induced Paragon to perform, after receiving notice demanding payment." Pet. ¶ 34. Plaintiffs' quantum meruit claim alleges that "Aetna received money from its insureds to pay for the [anesthesia] services" and "Aetna either agreed to pay Paragon for those services, or is required under the theory of quantum meruit to pay Paragon for those services." Pet. ¶ 36. Plaintiffs' unjust enrichment claim alleges that "Aetna accepted money from its insureds, and agreed to pay that money to those who provided anesthesia services to its insureds;" that the Paragon entities "provided covered anesthesia

services;" and that Aetna is "wrongfully retaining the money it received from its insureds." Pet. ¶ 38. Thus, several of Plaintiffs' claims rely on the alleged implied contract.

As previously stated, in *Paragon v. UnitedHealthGroup*, Chief Judge Fitzwater addressed facts virtually identical to those of the case at bar; the case involves the same Plaintiffs. There, Plaintiffs filed a lawsuit against several UnitedHealthcare entities ("United") seeking "payment for equipment used in rendering anesthesia services to persons whom United insured." *Paragon v. UnitedHealthGroup*, 2012 WL 1019953, at *1. Similarly, the court explained, "It is undisputed that plaintiffs are out-of-network providers who do not have an express contractual relationship with United." *Id.* Plaintiffs also asserted state law claims for "breach of implied contract, violation of the Texas Insurance Code, fraud, theft of services, quantum meruit, unjust enrichment, tortious interference with existing contracts and prospective business relationships, and estoppel and quasi-estoppel." *Id.* The court explained:

> Plaintiffs allege as their first cause of action a breach of implied contract claim. They aver that "United ... has implied contracts with POS, PAP, and OSS to pay for professional anesthesia services and equipment," "pursuant to the parties' agreements and course of dealing," yet "refus[ed] to pay for anesthesia equipment." *See id.* at ¶¶ 22–23, 26. Some of plaintiffs' other claims, such as theft of services, quantum meruit, and unjust enrichment, similarly rely on the alleged implied agreement and acceptance. *See, e.g., id.* at ¶¶ 36 (alleging in theft of services claim that United "agree[d] to pay for" services as "confirm[ed] ... by its words and conduct" and "accepted the services"); 38 (alleging in quantum meruit claim that United "received money from its insureds to pay for the services" and "accepted and agreed to pay for [plaintiffs'] services"); and 40 (alleging in unjust enrichment claim that United "accepted money from its insureds, and agreed to pay that money to those who provided anesthesia services" and "is unjustly enriched by receiving money from its insureds and then refusing to pay that money to [plaintiffs]").

*Paragon v. UnitedHealthGroup*, 2012 WL 1019953, at *5 (footnote omitted) (alterations in original). Based on the claims alleged by Plaintiffs and their derivative standing to sue under ERISA due to the assignment of benefits by United's insureds, the court concluded that plaintiffs

could have brought at least one state-law claim as an ERISA cause of action under § 502(a)(1)(B). *Id.* at *6. This court has already established that Plaintiffs have standing to seek benefits under the terms of the ERISA plans, as Aetna's insureds have assigned Plaintiffs their rights under those plans. The court determines that the claims alleged in *Paragon v. UnitedHealthGroup* are not materially different from the claims alleged in the case at bar, and the analysis therein serves as guidance for this court's opinion. Accordingly, this court likewise finds that the first prong of *Davila*, requiring that "at some point in time, [Plaintiffs] could have brought [their] claim under ERISA § 502(a)(1)(B)," is satisfied. *Davila*, 542 U.S. at 210.

### B. Whether There is an Independent Legal Duty Implicated by Defendants' Actions

The court finally considers whether Plaintiffs are alleging at least one claim that is not founded on a legal duty that is "independent" of the relevant ERISA plans. "A legal duty is not independent of ERISA if it 'derives entirely from the particular rights and obligations established by ERISA benefit plans.'" *Ambulatory Infusion*, 2006 WL 1663752, at *7 (quoting *Davila*, 542 U.S. at 210) (brackets omitted).

> The crucial question is whether [Plaintiffs are] in fact seeking benefits under the terms of the plan, or rights that derive from the independent basis of the contract. A healthcare provider suing on the basis of assignment of ERISA rights, benefits or claims from a plan member must proceed under the procedures established by § 502(a), as the provider is seeking to enforce the terms of the plan.

*Lone Star*, 579 F.3d at 529 n.3 (citations omitted). As to this question, the court also determines that the reasoning in *Paragon v. UnitedHealthGroup* applies to this case. In *Paragon v. UnitedHealthGroup* and in the case at bar, Plaintiffs argue that their claim involves the applicable *rate* of payment and not the *right to* payment, that is, whether the service is "covered." In *Paragon v. UnitedHealthGroup*, United contended that it had "already paid the anesthesiologist and/or physician performing the procedure for the same [equipment] services for

Memorandum Opinion and Order – Page 15

which Plaintiffs sought reimbursement." 2012 WL 1019953, at *7. United offered documentary evidence that it denied plaintiffs' equipment charges because they were duplicative. *Id.* For example, an "Explanation of Benefits" ("EOB") sent to the plaintiffs stated that the claim was denied because the "procedure code and modifier are the same as or equivalent to another procedure code and modifier previously submitted by another health care provider. No further benefits are available for this service." *Id.* Another EOB stated that "reimbursement has been previously issued for these dates of service." *Id.* After, considering United's evidence that the equipment claims were denied on the basis of duplicative charges, the court held that the plaintiffs' breach of implied contract involved the *right to* payment. *Id.*

The Aetna entities present evidence that Plaintiffs' claims for charges for equipment set-up, use, and delivery for office-based surgery were not covered because the Plaintiff submitting the claim was not a recognized facility or surgery center. For example, an EOB pertaining to a claim for benefits in the amount of $10,690 for such equipment provided on December 9, 2009, to a member of a health plan sponsored by RFPG states: "This statement includes a denied expense. Please call the number located on the Member I.D. card for an explanation." Defs.' App. (Doc. 14) 270. The supporting affidavit of Aetna Investigator Kim LaJoie explains that "Aetna denied [AHS's] claim for $10,690.00 because Aetna determined that AHS's services were not covered under the terms of the member's plan as AHS was not a recognized facility or surgery center." *Id.* at 268. Another EOB pertaining to a claim for benefits in the amount of $6,250 for such equipment provided on June 26, 2009, to a member of a health plan sponsored by Cognizant also states: "This statement includes a denied expense. Please call the number located on the Member I.D. card for an explanation." Defs.' App. (Doc. 14) 271. The supporting affidavit of Aetna Investigator Kim LaJoie explains that "Aetna denied [AHS's]

claim for $6,250.00 because Aetna determined that AHS's services were not covered under the terms of the member's plan as AHS was not a recognized facility or surgery center." *Id.* at 268-69. A different EOB pertaining to a claim for benefits in the amount of $5,066 for such equipment provided on May 30, 2007, to a member of a health plan sponsored by Plains Capital indicates that Aetna denied charges in the amount of $5,066 because the Plains Capital plan did not cover such equipment charges. Defs.' App. (Doc. 14) 272. The supporting affidavit of Aetna Investigator Kim LaJoie explains that "Aetna denied [POS's] claim for $5,066.00 because Aetna determined that POS's services were not covered under the terms of the member's plan as AHS was not a recognized facility or surgery center." *Id.* at 268-69. After considering Defendants' evidence that the equipment claims were denied because the services were not rendered in a recognized facility or surgery center, the court determines that Plaintiffs' breach of implied contract involves the *right to* payment.

"Courts have held that when the question is the right to payment, as opposed to the rate of payment, ERISA complete preemption is triggered and plaintiffs' motion for remand must fail."[5] *Paragon v. UnitedHealthGroup*, 2012 WL 1019953, at *7 (quoting *Memorial Hermann Hosp. System v. Aetna Health Inc.*, 2011 WL 3703770, at *3 (S.D. Tex. Aug. 23, 2011) and *Lone Star*, 579 F.3d at 530-31) (alterations omitted). "Thus although plaintiffs frame their claim in terms of a breach of an implied contract claim, it is completely preempted if the right to payment nonetheless turns on the terms of an ERISA benefit plan and not an independent obligation."

---

[5] Plaintiffs cite this court's opinion in *Plano Orthopedic & Sports Medicine Center, P.A. v. Aetna U.S. Healthcare of North Texas, Inc.*, 2011 WL 1428977 (N.D. Tex. April 12, 2011) to emphasize that the court has previously recognized the distinction between cases involving *rate of* payment and *right to* payment issues. In *Plano Orthopedic*, based on the language asserted in the plaintiff's proposed amended complaint, the court determined that the plaintiff was "judicially estopped from asserting insurance coverage claims in any state action that would invoke ERISA and the *right* to payment" and concluded that there was thus "no longer a federal question to form the basis of the court's subject matter jurisdiction over [the] lawsuit." *Plano Orthopedic*, 2011 WL 1428977, at *4. In the case at bar, however, the court determines that Plaintiffs *are* asserting a claim that involves the *right to* payment. Thus, *Plano Orthopedic* is inapposite to the facts of this case.

**Memorandum Opinion and Order – Page 17**

*Paragon v. UnitedHealthGroup*, 2012 WL 1019953, at *7 (citation omitted). As in *Paragon v. UnitedHealthGroup*, Plaintiffs allege in their breach of implied contract claim that their right to payment derives from "the parties' agreements and course of dealing." *See* Pet. ¶ 21. The record reflects that the out-of-network Plaintiffs do not have a provider agreement with Defendants, and Plaintiffs are seeking to recover plan benefits. *See Paragon v. UnitedHealthGroup*, 2012 WL 1019953, at *8 ("In their breach of implied contract claim, plaintiffs allege that their right to payment derives from 'the parties' agreements and course of dealing.' But the record shows that the out-of-network plaintiffs do not have a provider agreement with United, *and* these plaintiffs are seeking to recover plan benefits.") (citing *Foundation Ancillary Servs., L.L. C. v. United Healthcare Ins. Co.*, 2011 WL 4944040, at *2 (S.D.Tex. Oct.17, 2011) ("In contrast to *Lone Star*, Plaintiff and Defendants here have no provider agreement between them that would form an independent basis for recovery. Resolving this dispute is possible only by reference to and interpretation of the patients' ERISA plans, rather than any other contract.") Thus, in order for the Paragon entities, as out-of-network Plaintiffs to recover at all, they must do so assignees of benefits under the plans administered by the Aetna entities, and they must establish a right to recover under the relevant ERISA plans. *Paragon v. UnitedHealthGroup*, 2012 WL 1019953, at *8 (footnote omitted). Accordingly, the court holds that Plaintiffs' breach of implied contract claim is completely preempted under ERISA section 502. Therefore, the court has federal question jurisdiction, and the Aetna entities have properly removed the case based on such jurisdiction.

## IV.     Conclusion

For the reasons herein stated, the court determines that it has federal question jurisdiction and Defendants' have properly removed this case. Accordingly, the court **denies** Plaintiffs' Motion to Remand.

**It is so ordered** this 27th day of June, 2012.

                                                                    _____
                                                                    Sam A. Lindsay
                                                                    United States District Judge